NELSON, and husband, Plaintiffs-Respondents, v. TRAV-
ELERS INSURANCE COMPANY, and others, Defendants-
Appellants.

*No. 75–375. Submitted on briefs October 5, 1977.—
Decided November 1, 1977.*
(Also reported in 259 N. W. 2d 48.)

For the appellants the cause was submitted on the briefs of *Robert D. Sullivan, Brian J. Henderson* and *Ames, Riordan, Crivello & Sullivan,* all of Milwaukee.

For the respondents the cause was submitted on the brief of *Philip Padden* and *Zubrensky, Padden, Graf & Bratt,* attorneys, of Milwaukee, and *Alan M. Clack* and *Thompson & Coates, Ltd.* of counsel, of Racine.

BEILFUSS, C. J.  The accident in question occurred on West Brown Deer Road, in the Village of River Hills, Milwaukee County, at approximately 1 p.m., on December 23, 1969.  West Brown Deer Road has three lanes: an eastbound and westbound lane, and a center lane.  It had snowed heavily during the morning and possibly up to the noon hour.  The east and west lanes had been plowed, but four to six inches of snow remained in the center lane.

A truck owned by Behling's Sewage Disposal was discharging sewage into a manhole located partially on the eastbound lane pursuant to a permit issued by the Metropolitan Sewerage Commission of the County of Milwaukee.  The manhole was located at the south edge of the roadway, approximately 367 feet east of a bridge where West Brown Deer Road crosses the Milwaukee River.  It was 36 inches in diameter; 30 inches of the manhole was in the traveled portion of the lane and six inches in the shoulder.  The driver of the truck was Lawrence Borchardt.  He parked the truck so that a

spout in the center of the rear was directly over the manhole. In this position the left side of the truck extended approximately three and one-half feet into the eastbound lane. Borchardt testified that five rear lights, including flashing lights on top of and at the rear of the truck were in operation at this time. A traffic officer testified these five lights were on when he arrived ten minutes after the accident.

The procedure in dumping the sewage involved attaching a 20-foot canvas hose to the spout which was then lowered into the manhole. Borchardt testified it was impossible to discharge sewage without locating the spout directly over the manhole because the hose would kink and sewage would spill out onto the highway.

The truck was seven and one-half feet wide and 17 to 20 feet long. The shoulder of the road was 11 feet wide and at its outer extreme, directly in line with the manhole, was a post carrying a traffic sign and a sewer vent. Borchardt stated that because of these physical impediments it was impossible to park the truck at a right angle to the roadway. He claimed that the truck acted as a barricade, and even if it would have been possible to discharge while parked on the shoulder the road would have to have been obstructed in some way to warn of the open manhole.

Borchardt further testified the plowed eastbound lane was 10 feet wide and that while parked at the manhole several eastbound cars passed him without going into the center lane as well as a large tank truck which passed shortly after the accident.

The car driven by Bonnie J. Nelson approached from the west. The bridge located west of the manhole is slightly arched, the crest being about five feet higher than the western edge of the bridge. Nelson testified that because of the weather conditions she could not see

over the crest as she approached from the west. She testified that it was snowing and that snow was being blown across the road in almost blizzard conditions. A police officer who arrived at the scene ten minutes later testified that there was a light snow falling but considerable blowing snow. Borchardt disagreed with the characterization "blizzard conditions," but did agree that there was blowing snow.

As West Brown Deer Road approaches the bridge from the west, it comes out of an "S" curve and the speed limit increases from 25 to 50 miles per hour. Nelson stated that her speed was from 20 to 25 miles per hour as she proceeded through the "S" curve and crossed the bridge.

At the crest of the bridge she saw the Behling Sewage Disposal truck in the distance. She could not tell whether it was moving or stopped, and testified that she saw no flashing lights. The truck was visible to her for only a split second before the snow obstructed her vision. She did not slow down but continued down the highway. Suddenly the truck "loomed up" at her out of the snow. In order to avoid striking it she turned to the left into the snow covered outer lane, applied her brakes, and lost control of her vehicle. It skidded into the westbound lane where she struck a car driven by Alice S. Wilson. There was no snow in the plowed eastbound lane but it was wet.

Bonnie J. Nelson suffered severe injuries and brought suit against Nicholas Behling d/b/a Behling's Sewage Disposal, its insurer, the Travelers Indemnity Company, and Lawrence Borchardt for property damage, pain and suffering, permanent disablement and wage loss. Her husband, David, was also a party, seeking medical expenses and damages for loss of services, society and companionship.

The jury returned a special verdict which found Lawrence Borchardt 75 percent negligent as opposed to 25 percent negligence on the part of Bonnie J. Nelson. Prior to submission to the jury the court found Borchardt negligent as a matter of law "with respect to the placement" of the truck, and the jury found that this was causal. The jury did not, however, find Borchardt negligent for failure to warn other motorists of the presence of the truck. Bonnie J. Nelson was found negligent with respect to speed, lookout, and management and control, but only causally negligent with respect to management and control. Bonnie J. Nelson was awarded $17,639.22 and her husband received $3,297.70.

The judgment was entered on the verdict on August 8, 1975.

The defendants-appellants contend it was error (1) to deny their motion for a nonsuit, (2) to deny their motion for a directed verdict, (3) to find Borchardt negligent as a matter of law "with respect to the placement" of the truck, (4) to fail to find the plaintiff Bonnie J. Nelson negligent as a matter of law and for refusal to change the cause answer as to speed and lookout from "No" to "Yes," and (5) to omit a part of the pattern instruction as to speed.

Two of the errors assigned are that the trial court erred in refusing to grant the motions for a nonsuit and directed verdict. The rule which applies to both of these issues is that if there is any credible evidence or favorable reasonable inferences therefrom that will support the claims of the plaintiffs the motion should be denied and the ultimate facts be determined by the jury.[2] We do not propose to repeat or discuss the evidence in

[2] *Schoenfeldt v. Babcock*, 26 Wis.2d 569, 133 N.W.2d 262 (1965); *Zillmer v. Miglautsch*, 35 Wis.2d 691, 151 N.W.2d 741 (1967).

answer to these issues. Suffice it to say, we have examined all of the evidence and there is sufficient credible evidence in support of the plaintiffs' claims as to negligence and causation and, further, that upon these facts it cannot be held as a matter of law that the plaintiff Bonnie J. Nelson was more causally negligent than the truck driver Borchardt. The trial court did not err in denying these motions.

The "rule of the road," insofar as it applies here, is contained in sec. 346.51, Stats., and is as follows:

*"Stopping, standing or parking outside of business or residence districts.*

"(1) No person shall park, stop or leave standing any vehicle, whether attended or unattended, upon the roadway of any highway outside a business or residence district when it is practical to park, stop or leave such vehicle standing off the roadway, but even the parking, stopping or standing of a vehicle off the roadway of such highway is unlawful unless the following requirements are met:

"(a) An unobstructed width of at least 15 feet upon the roadway of such highway must be left opposite such standing vehicle for the free passage of other vehicles. This section shall not apply to busses used exclusively for the transportation of school children when such busses are loading or unloading such children where red flashing signal lights are used as required by s. 346.-48(2).

"(b) Such standing vehicle must be capable of being seen by operators of other vehicles from a distance of 500 feet in each direction along such highway.

"(2) This section also applies to vehicles or equipment used in highway maintenance or construction work unless the nature of the work is such as to require the stopping or standing of the vehicle or equipment on the roadway."

The appellants contend that under the facts of this case the question of whether it was practical to park off

the roadway was a question of fact for the jury and that it was error for the trial court to answer the question as a matter of law. We agree.

The trial court concluded that parking the truck partially on the highway so as to be directly over the manhole was a mere matter of convenience and not practicality. He opined the cases dealing with practicality dealt with either disabled vehicles or with nonexistent or inadequate shoulders which made it impossible to remove the vehicle from the traveled surface.

The appellants cite *Gast v. Dallmann,* 240 Wis. 103, 2 N.W.2d 716 (1942), for the proposition that economic convenience may be a basis for determining practicality. There the court dealt with the precursor to the present sec. 346.51, Stats., and stated:

"That section 85.19 (1), Stats., does not apply to every case of stopping on a highway is manifest. Plainly, if a car is stopped on direction of a traffic officer, there would be no violation. So if it were stopped while making necessary repairs [citing cases]. Obviously a milk truck may lawfully stop on the highway for the purpose of taking on milk or delivering empty cans, or a rural mail carrier for the purpose of delivering mail." 240 Wis. at 106.

The *Gast Case* concerned a voluntary stop on a highway by a passenger car to discharge passengers; the car could have been driven into a driveway but was not. The court held that this was permissible, notwithstanding the practicality of parking elsewhere, because a section of the then existing statutes, sec. 85.10 (30), defined "parking" as the stopping or standing of a vehicle upon the highway otherwise than, *inter alia,* "temporarily for the purpose of and while actually engaged in loading or unloading." This rule is today found in sec. 346.53, Stats.,[3] which allows parking on a highway even

---

[3] *"Parking prohibited in certain specified places.* No person shall stop or leave any vehicle standing in any of the following

where specifically prohibited when done for the purpose of loading or unloading, if the vehicle is attended so that it may be removed if necessary.

While there is no evidence that parking was prohibited on this portion of West Brown Deer Road, the clear import of sec. 346.53(6), Stats., is that parking for the purpose of loading or unloading may be lawful on any highway even if expressly prohibited.

The basic statutory sections which led the *Gast* court to its conclusion are still existent and militate against appellants' argument that economic convenience is beyond the practicality test of sec. 346.51(1), Stats.

We believe the discharge of sewage into the manhole is synonymous with unloading and that the trial court erred by finding Borchardt negligent as a matter of law in refusing to submit the question of practicality to the jury. In fact, it may be that if there were no violations of clearance or view, the placement of the Behling truck was *per se* lawful.

There are many facts which appear in the record that are material as to whether it was practical for Borchardt to park his truck where and when he did,

---

places except temporarily for the purpose of and while actually engaged in loading or unloading or in receiving or discharging passengers and while the vehicle is attended by a licensed operator so that it may promptly be moved in case of an emergency or to avoid obstruction of traffic:

"(1) In a loading zone;

"(2) In an alley in a business district;

"(3) Within 10 feet of a fire hydrant, unless a greater distance is indicated by an official traffic sign;

"(4) Within 4 feet of the entrance to an alley or a private road or driveway;

"(5) Closer than 15 feet to the near limits of a crosswalk;

"(6) Upon any portion of a highway where and at the time when parking is prohibited, limited or restricted by official traffic signs."

such as the weather conditions, visibility and condition of highway surface, the provisions of the permit, the location of the manhole and condition of the shoulder, and the warnings given by him. These and other facts as they appear should be considered by the jury and the jury charged with the responsibility of deciding the ultimate fact. The practicability of parking off the roadway is dependent upon the exercise of reasonable judgment and discretion in view of all the circumstances.[4] We conclude it was error to find Borchardt negligent as a matter of law "with respect to the placement" of the sewage truck on the roadway.

The appellants contend that it was prejudicial error for the trial court (1) to deny their motion that Bonnie J. Nelson be held negligent as a matter of law, and (2) to refuse to change the answers in the special verdict where the jury found Nelson not causally negligent in regard to speed and lookout. The jury did find Nelson negligent as to speed, lookout, and management and control. However, only the negligence in management and control was found to be causal.

The fact that the jury found Nelson negligent indicates that any trial court error in failing to find her negligent as a matter of law was not prejudicial. Upon a new trial, which will be ordered, the question of whether Bonnie J. Nelson was negligent as a matter of law will be dependent upon the evidence in the new trial. We will however discuss the question of whether the trial court should have changed the jury's cause answers from "No" to "Yes" as to speed and lookout on the part of Bonnie J. Nelson.

The rule to guide the trial court and this court, when requested to change an answer in a jury verdict, is the evidence will be viewed in the light most favorable to

---

[4] *Kline v. Johannesen,* 249 Wis. 316, 24 N.W.2d 595 (1946).

the verdict and the verdict will be affirmed if supported by any credible evidence.[5]

In *Kinsman v. Panek,* 40 Wis.2d 408, 162 N.W.2d 27 (1968), a driver entered a region of blowing snow which reduced visibility to 40 feet. He reduced his speed to 25 to 30 miles per hour but was unable to prevent a collision with a state patrol car which had stopped to investigate an accident. The driver was unable to stop when the patrol car came into view through the snow. This court held that the trial court correctly changed the jury's negative responses on negligence and causal negligence. The court stated at p. 417:

"The test of cause in Wisconsin is whether the defendant's negligence was a substantial factor in contributing to the result. *Milwaukee & Suburban Transport Corp. v. Royal Transit Co.* (1966), 29 Wis.2d 620, 628, 629, 139 N.W.2d 595. It is apparent from the record that no jury question is presented in regard to this portion of the verdict. 'Reasonable men would not differ as to whether the defendant's conduct was, or was not, a substantial factor in producing the result.' Prosser, *Law of Torts* (2d ed.), page 281, sec. 50."

As this almost identical factual situation indicates, the trial court should have changed the jury's response and held that Bonnie J. Nelson was causally negligent with regard to speed. If she had been able to stop within the distance that she could see ahead, it is probable the accident would have been avoided. Thus her speed, even though reduced well below the speed limit, as in *Kinsman,* was a substantial factor contributing to the accident.

However, the jury determination that she was not causally negligent with respect to lookout presents a closer question. The evidence indicates that she was

[5] *Roach v. Keane,* 73 Wis.2d 524, 536, 243 N.W.2d 508 (1976).

observant. She saw the truck, but failed to reduce her speed and then lost management and control over her vehicle.

If the evidence showed that Nelson had looked away or had simply failed to see the Behling truck, then lookout would have been a causal factor. But she claims that she looked straight ahead but her vision was obscured by the snow. Then the truck reappeared when it was too late. There is credible evidence to support the jury finding that there was no causal negligence as to lookout.

The appellants also allege it was error to omit the last sentence of the requested pattern instruction of Wisconsin Jury Instructions—Civil, Part I, #1310:

"1310 SPEED: OBSTRUCTED VISION

"It is a rule of law that when one drives a motor vehicle on a highway, it is his duty, independent of any statute, to drive at such a rate of speed as will permit him to stop within the distance he can see ahead. [This means that if, by reason of *(a grade) (fog) (rain) (snow) (dust) (smoke) (or otherwise)*, the distance that he can plainly see objects or obstructions ahead of him is reduced, he must drive at such a rate of speed as will enable him to bring his car to a standstill within such reduced distance.] [When a driver's vision is completely obscured, it is his duty to slow down, or even stop, until the cause of such obscured vision is at least in part removed.]"

While it might not have been prejudicial to omit the last sentence of the pattern instruction because it is only a logical extension of what precedes it, we believe the instruction should have been given in its entirety. It is an accurate statement of the law and could have had application to one version of the facts.

Because we have concluded it was prejudicial error to answer the negligence question as to placement of

the truck on the highway "Yes" as a matter of law, it follows the judgment must be reversed and a new trial ordered.

None of the parties to this appeal challenge the findings of the jury as to the damages sustained by the plaintiffs—therefore a new trial is limited to the liability issues.

*By the Court.*—Judgment reversed and remanded for further proceedings not inconsistent with this opinion.