Roger L. MILLS, Plaintiff-Appellant, †

v.

REGENT INSURANCE COMPANY, Defendant-
Respondent.

Court of Appeals

*No. 88-0839. Submitted on briefs May 8, 1989.—Decided
October 5, 1989.*

(Also reported in 449 N.W.2d 294.)

†Petition to review denied.

567

For the plaintiff-appellant the cause was submitted on the briefs of *Hesslink Law Office, S.C.,* by *Robert M. Hesslink, Jr.,* of Madison.

For the defendant-respondent the cause was submitted on the briefs of *Winner, McCallum, Wixson & Pernitz,* by *Scott G. Pernitz,* of Madison.

Before Gartzke, P.J., Dykman and Sundby, JJ.

GARTZKE, P.J.   Roger Mills appeals from the judgment dismissing his tort action against Regent Insurance Company. Mills alleges that Regent, in bad faith, denied his claim on a fire policy Regent had issued covering his tavern. Judgment was entered for Regent because the trial court granted Regent's motions for dismissal and a directed verdict after the jury had returned

a verdict finding that Regent had denied Mills's claim in bad faith.

We deem the issues to be whether: (1) any credible evidence which would sustain a finding of bad faith was introduced at trial; and (2) the trial court properly excluded evidence of events after Regent denied the claim. We conclude that the record contains no credible evidence which would sustain a finding that one of the two elements of bad faith exists, and that none of the events cited occurring after Regent denied his claim would have established that element. We therefore affirm.

## 1. BACKGROUND

Mills and his family operated a tavern and restaurant in the village of Gays Mills. During the night of September 9, 1984, a fire set by an arsonist damaged the building. Regent had insured the property against damage by fire, up to a limit of $185,000. Mills filed a proof of loss with Regent in the amount of $191,591.68. After an investigation, Regent denied the claim. The letter denying the claim alleged that Mills instigated the arson. The policy excluded damage intentionally caused by an insured.

Mills filed an action in the circuit court, alleging breach of contract and bad faith. Separate trials were held on compensatory damages for breach of contract, the policy defense, and bad faith denial of Mills's claim. The parties stipulated that the damage to the contents of the building was $27,515. The jury in the first trial found $100,000 damage to the building. The jury in the second trial found that Mills had not instigated the arson. Policy coverage of the fire was therefore established.

A third trial followed on the liability phase of the bad faith claim. That trial resulted in the appeal before

us. During the trial, the court granted Regent's motion in limine to exclude all evidence of events after the denial of Mills's claim. At the close of Mills's evidence, Regent moved for dismissal on the ground of insufficiency of evidence, sec. 805.14(3), Stats., and the court took the motion under advisement. At the close of all evidence, Regent moved for a directed verdict on the same ground, sec. 805.14(4). The court took that motion under advisement and submitted the case to the jury which returned a verdict finding bad faith on Regent's part.

After the verdict, Regent renewed its motions for dismissal and a directed verdict, pursuant to sec. 805.14(5)(d), Stats. The trial court granted both motions. Mills moved the court to change the answer of the verdict it had directed back to the answer the jury had given, apparently under sec. 805.14(5)(c). The court denied Mills's motion. The court then entered judgment dismissing the complaint, and Mills appealed.

## 2. SUFFICIENCY OF EVIDENCE

A motion challenging the sufficiency of the evidence to support a verdict may not be granted "unless the court is satisfied that, considering all credible evidence and reasonable inferences therefrom in the light most favorable to the party against whom the motion is made, there is no credible evidence to sustain a finding in favor of such party." Sec. 805.14(1), Stats. That standard applies to both the trial court and this court on appeal. *Helmbrecht v. St. Paul Ins. Co.,* 122 Wis. 2d 94, 109-10, 362 N.W.2d 118, 127 (1985). It applies both to motions to dismiss at the close of the plaintiff's case and to a motion for a directed verdict, if both challenge the sufficiency of the evidence. Sec. 805.14(3) and (4).

While the trial court granted both such motions, we choose to review the order directing a verdict. We therefore review the evidence produced by both Mills and Regent to determine whether credible evidence exists which supports a verdict in Mills's favor. We conclude the record contains no such evidence, and by affirming the order directing a verdict we automatically affirm the order granting the motion to dismiss made at the close of Mills's case.

*Anderson v. Continental Ins. Co.,* 85 Wis. 2d 675, 691, 271 N.W.2d 368, 376 (1978), states the elements which must be established to prove an insurer's bad faith breach of a policy: "To show a claim for bad faith, a plaintiff must show the absence of a reasonable basis for denying benefits of the policy *and* the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." (Emphasis added.) Under the facts alleged in the complaint in *Anderson,* the insured's fire claim was not fairly debatable and the company refused to investigate the claim or the extent of damages. *Id.* at 691–92, 271 N.W.2d at 376–77. Because both elements of bad faith were pleaded, the *Anderson* court held that the complaint stated a claim.

We turn to the evidence in this case. The restaurant was one of three taverns in Gays Mills. At the time of the fire it had more business than that of the other two combined. A bartender who worked both for Mills and a former competitor believed from what he saw of the tavern's cash receipts that it was "making money."

When his policy with another insurance company expired in 1982, Mills wanted to increase coverage on the building from $150,000 to $175,000. His insurance agent obtained that coverage from a company other than Regent, but the premiums were unacceptable to Mills.

Mills then purchased $150,000 building coverage and $25,000 contents coverage from Regent. Two months before the fire, he increased the contents coverage to $35,000.

The tavern's business had seasonal lows and highs. The low period was in the summer. The high period began in late September with a local celebration called the Apple Festival. The fire occurred in early September, three weeks before the busy season started.

At the time of the fire, Mills had debts due or shortly to become due and was about $4,000 behind in mortgage payments. The mortgagee had taken no action against Mills, since he had previously fallen behind and had always caught up during the busy season. The mortgagee did not consider the arrearage serious enough to warrant an adverse comment on Mills's credit record. No other creditors were pressing for payment. A $4,000 note was due the following November which had previously been renewed several times, and a mortgage with a principal balance of $40,988 was due on June 1, 1985. All told, Mills's debt load at the time of the fire was $130,000. Mills admitted that the tavern had broken even or lost money. The family members supported themselves by taking $150 to $200 per week from the cash receipts, and Mrs. Mills drove a school bus.

On the day before the night of the fire, the Mills family left to spend the weekend in Illinois. Only Mills and his wife had the keys. They left the keys with the part-time bartender, who testified that he believed that he had locked all of the doors when closing the tavern on the night of the fire. He was not aware of an unlocked trap door which led into the building from the crawlspace under it. Mills testified that to his knowledge only he and his wife knew about the trapdoor.

After the fire, the glass patio door from the building was found unbroken and lying in front of the building. Regent's claims manager believes that the glass door probably would have broken had it been blown outward in the explosion which accompanied the fire rather than the door having been forced open to gain entry. Regent's cause and origin investigator told Mills that the damage to the rear door frame and wall was such that it was impossible to tell if a forced entry had been made there. The cover to the window entrance into the crawlspace closest to the trapdoor was found detached from the building.

A fuse composed of baling twine and empty 12-pack beer cartons had been attached to a 20-foot segment of a wood beam under the floor of the building. The fire was set at three separate origins, including under the building, and a number of empty and full gasoline containers were found in the building. An above-average number of fires in which arson was suspected had occurred in the Gays Mills area. Despite Mills's cooperation with Regent's investigation and his offer to take a lie detector test, Regent suspected that Mills had instigated the arson.

The trial court concluded, and we agree, that the credible evidence viewed favorably to Mills fails to establish the absence of a reasonable basis for the insurance company to deny the claim, the first element of the tort of bad faith. The fire was unquestionably the result of arson. Mills had debts of about $49,000 due or coming due within a year after the fire and total debts of about $130,000. He admitted that the business never made money. He offered nothing tending to prove he could have satisfied the debts had the business remained open, although the evidence supports the inference that the debt instruments could have been renewed. He had

That Regent failed in the second trial to prove Mills had instigated the arson does not in itself make its earlier denial of the claim unreasonable. The fact that coverage under the policy was ultimately established fails to prove the insurer denied the policy claim in bad faith. *Mowry v. Badger State Mut. Cas.*, 129 Wis. 2d 496, 517, 385 N.W.2d 171, 181 (1986). This state has not adopted a strict liability approach to erroneous claim denials, and it is not bad faith for an insurer to deny a claim "when the question of policy coverage is fairly debatable." *Id.* at 516–17, 385 N.W.2d at 180–81.[2]

---

[1] Because we have reviewed the credible evidence favorable to Mills, we have not taken into account other evidence of a prior fire, unusual behavior by Mills in giving away baseball hats and free drinks before the fire, a possibly inflated repair claim, and a hearsay report that Mills had engaged an arsonist.

[2] Some courts go so far as to grant a directed verdict in favor of the insurer as to bad faith unless the insured is entitled to a directed verdict in his or her favor on the policy claim. *See, e.g., National Sav. Life Ins. Co. v. Dutton,* 419 So. 2d 1357, 1362 (Ala. 1982); *see generally* S. Ashley, *Bad Faith Actions: Liability and Damages* sec. 5:03.50 (Supp. 1989). The rule has been refined where its strict application would be inappropriate. So that an insurer cannot deny a claim and then search for supporting evidence, the *Dutton* rule considers only the evidence available to the insurer at the moment of denial. *Aetna Life Ins. Co. v. Lavoie,* 505 So. 2d 1050, 1053 (Ala. 1987). The *Dutton* rule does not apply if the only evidence precluding a directed verdict in favor of the plaintiff on the policy claim is contradicted testimony by the insurer's agents. *Jones v. Alabama Farm Bureau Mut. Cas. Co.,* 507 So. 2d 396, 401 (Ala. 1986).

Mills seems to argue that an insurance company may be liable to its insured for bad faith denial of a claim merely for having conducted a flawed investigation. This argument was rejected by the first circuit court of appeals in *Pace v. Insurance Co. of North America,* 838 F.2d 572, 584 (1st Cir. 1988), an opinion which discusses *Anderson* at length. The *Pace* court's reasoning is persuasive:

> [B]oth an *objective* and a *subjective* component are required:   1) the absence of an objectively reasonable basis to deny, and 2) the insurer's subjective knowledge or its reckless disregard of the absence of such basis. The subjective component is essential, as the Wisconsin court states, to prove intentionality: " 'Bad faith' by definition cannot be unintentional." [*Anderson,*   85 Wis. 2d at 691, 271 N.W.2d at 376.] Bad faith can be inferred, however, from a reckless disregard of a lack of a reasonable basis for denial or a reckless indifference to facts or to proof submitted by the insured. *Id.* [at 693, 271 N.W.2d] at 377.
>
> But while the subjective element can be inferred from an investigation that recklessly disregards the facts, the objective element must also be shown. This requires establishing that a reasonable insurer, proceeding under the facts and circumstances that a proper investigation would have revealed would not have denied payment of the claim.  *See James v. Aetna Life & Casualty Co.,* [109 Wis. 2d 363, 370,] 326 N.W.2d 114, 117 (Wis. Ct. App. 1982).
>
> . . ..
>
> To remove the objective component of the test—to permit recovery against an insurer because of flaws in the investigation even though the insurer has, in fact, an objectively reasonable basis for denying coverage—would be to remove most of the protection for insurers and premium payers announced in

*Anderson,* [85 N.W.2d at 693-94, 271 N.W.2d at 377,] since it is almost impossible to conduct an investigation as to which some question of its adequacy, sufficient to get to the jury, cannot, in hindsight, be raised. Thus if there is an objectively reasonable basis to deny coverage, existence of investigative flaws, standing alone, are not enough to permit recovery in tort against an insurer . . ..

*Id.* (emphasis in original).

■

Because the evidence produced by the parties, viewed in the light most favorable to Mills, failed to establish that no objectively reasonable basis existed for Regent to deny his claim, the trial court properly directed a verdict against him.[3] For that reason, we do not consider whether the evidence established the second or subjective element of his bad faith case, the company's "knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." *Anderson,* 85 Wis. 2d at 691, 271 N.W.2d at 376.

### 3. EVENTS AFTER CLAIM DENIED

■

We do not agree that the trial court erred by excluding evidence that after Regent denied Mills's claim, (1) it refused to pay the holder of the mortgage on the tavern until after Regent's liability under the mortgage clause in the policy was established by another trial and appeal; (2) Regent's refusal to immediately pay the mortgagee

---

[3] Mills argues that by granting Regent's motions the trial court required expert testimony as to a claim's debatability as a matter of law. Since we have concluded that the evidence, including that produced by the company, did not establish the objective element of Mills's case, we need not consider whether the court imposed such a requirement or whether it would be proper.

harmed Mills; and (3) Regent continued to deny his claim even after he had been acquitted in a criminal trial on an arson charge arising out of the same fire. This evidence, whether viewed alone or with the evidence admitted during the trial, would not permit a finding that Regent lacked a reasonable basis on which to deny Mills's claim.

First, whether Regent had a reasonable basis for its belief that Mills had instigated the arson was not an issue in the litigation between Regent and the mortgagee.[4] For that reason, whether Regent had a reasonable basis for denying payment to Mills's mortgagee or that denial harmed Mills is irrelevant to whether Regent had a reasonable basis for denying payment to Mills.

Second, whether Mills had instigated the arson continued to be fairly debatable after his acquittal in the criminal trial. The state's burden in the criminal case was to prove beyond a reasonable doubt that Mills was guilty of arson. In the second trial, a civil case in which Regent's policy defense of arson was tried, Regent had the burden to prove "by the greater weight of the credible evidence" that Mills was the arsonist. Wis J I—Civil 200. In the absence of new evidence tending to exculpate Mills and produced after Regent originally denied his claim, the company continued to have an objectively reasonable basis for a "bona fide belief that [it] might defeat the [breach of contract] action." *Mowry,* 129 Wis. 2d at 516, 385 N.W.2d at 181, *quoting Johnson v. Ameri-*

---

[4] A bad faith denial of payment to his mortgagee may have been a separate tort. The trial court did not allow Mills to amend his pleadings to include such a claim. Whether the ruling was error is not raised on appeal. We review it no further. *Harmann v. Schulke,* 146 Wis. 2d 848, 858 n. 5, 432 N.W.2d 671, 675 (Ct. App. 1988).

*can Family Mut. Ins. Co.,* 93 Wis. 2d 633, 646, 287 N.W.2d 729, 736 (1980).

Since none of the excluded evidence would have established the lack of an objectively reasonable basis to deny Mills's claim, the first element of a bad faith claim, we need not decide whether the excluded evidence was relevant to the second element of a bad faith claim.

Mills requests a new trial in the interest of justice so that he may present the excluded evidence. We possess discretion under sec. 752.35, Stats., to grant a new trial in the interest of justice. A new trial for the purpose Mills posits would be futile. Inclusion of the excluded evidence would not assist Mills in establishing a *prima facie* case. We are satisfied that the real controversy was well tried by competent counsel. A new trial would not probably produce a different result. Neither reason for a discretionary reversal exists in this case. *See State v. Wyss,* 124 Wis. 2d 681, 735, 370 N.W.2d 745, 770 (1985).

*By the Court.*—Judgment affirmed.