Terry RICHARDS, Plaintiff-Appellant,
Roger RICHARDS, Plaintiff,

v.

Jairo MENDIVIL, M.D., Defendant-Respondent.†

Court of Appeals

*No. 95–0228. Oral argument January 4, 1996.—Decided February 21, 1996.*

(Also reported in 548 N.W.2d 85.)

†Petition to review denied.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *John J. Albert* and *Steven J. Watson* of *Albert, Jude, Boyd & Simanek, S.C.* of Racine. Oral argument was by *John J. Albert.*

On behalf of the defendant-respondent, the cause was submitted on the brief and oral argument of *Jan M. Schroeder* of *Peterson, Johnson & Murray, S.C.* of Milwaukee.

Before Anderson, P.J., Brown and Nettesheim, JJ.

ANDERSON, P.J.   In this appeal we conclude that leaving a portion of a nontherapeutic localization hook wire in Terry Richards's right breast is a situation where expert testimony as to the standard of care is not required. We reverse the trial court's order granting Dr. Jairo Mendivil's motions after verdict and dismissing the complaint because a layperson can reasonably infer that Mendivil failed to exercise proper care and skill during surgery when he left a foreign object in Richards's body.

In early 1991, Richards was referred to Mendivil when a mammogram showed the possibility of malignant microcalcifications in her right breast. After reviewing Richards's medical history, Mendivil sched-

uled her for a mammographic hook wire localization and biopsy. This procedure had three principal stages. First, a radiologist placed Richards's right breast in a compression device and shot an x-ray to find the lesions in the breast. Based upon the x-ray, a small mark was made on the outside of her breast in the location of the lesions. The radiologist numbed Richards's breast and inserted a sharp hollow needle. A second x-ray was taken to confirm that the needle was close to the lesion. The radiologist then threaded a thin wire with a barbed hook on one end, approximately fifteen centimeters in length, through the needle into the breast and fixed the barb hook in the breast tissue by pulling back on the needle. The radiologist's goal was to place the barbed hook within one centimeter of the lesions in Richards's breast. The radiologist completed this portion of the procedure by taping approximately seven centimeters of the wire, protruding from the breast, to prevent movement. Once the hook wire was fixed, Richards was transferred to surgery.

Mendivil performed the second stage of this biopsy procedure. The localization hook wire was located in the medial, upper part of Richards's right breast. Using an x-ray as a guide to the location of the hook wire, Mendivil made an incision from the top of the breast down to where he believed the lesions were located. Once he reached this area he dissected the tissue. To remove the dissected tissue and the fifteen-centimeter localization hook wire, Mendivil had to pull the tissue and the wire, including the seven-centimeter portion taped to the outside of the breast, through the breast tissue to the incision.

In the third stage of the procedure, the dissected tissue was then sent to the radiologist for examination. The tissue specimen was x-rayed. In his review of the x-

ray, the radiologist did not see any of the microcalcifications that had been detected in Richards's earlier mammogram. Richards was discharged the same day.

Initially, Richards's recovery was uneventful and by March 1991 she began to feel that she was healing. However, she began to experience sharp pains when using her right arm and began to suspect something was wrong. A follow-up mammogram was performed in November 1991 and it was discovered that a three-centimeter piece of the hook wire was in her right breast. Mendivil removed the three-centimeter remnant and some scar tissue from Richards's right breast in December 1991.

Richards and her husband started this medical malpractice action in 1993. The complaint alleged res ipsa loquitur as a second cause of action. The trial court denied Mendivil's motion for summary judgment in which he contended that res ipsa loquitur was not applicable because he did not have exclusive control of the hook wire and that the Richardses' action failed because they did not have any expert testimony to support their medical negligence cause of action.

This case proceeded to a jury trial where Richards relied upon res ipsa loquitur to prove that Mendivil had been negligent in his care and treatment of her. At the close of Richards's case-in-chief, Mendivil moved for dismissal on the grounds of insufficiency of evidence, § 805.14(3), STATS., and the court took the motion under advisement.[1] At the close of all the evidence, Mendivil moved for a directed verdict on the same

---

[1] One of the practical effects of the res ipsa loquitur doctrine is that upon the close of the plaintiff's evidence, defendant is not entitled to a nonsuit or directed verdict. *American Family Mut. Ins. Co. v. Dobrzynski*, 88 Wis. 2d 617, 629, 277 N.W.2d 749, 754 (1979).

ground, § 805.14(4). The court took that motion under advisement and submitted the case to the jury which returned a verdict finding that Mendivil's negligence caused injury to Richards and assessing total damages of $24,034.30.

After the verdict, Mendivil moved for a directed verdict, § 805.14(5)(d), STATS., and, in the alternative, moved to change the "Yes" answers to questions one and two of the verdict to "No," § 805.14(5)(c).[2] The trial court granted both motions. The trial court denied Richards's motion for judgment on the verdict. The court entered judgment dismissing the complaint, and Richards appealed.

A motion challenging the sufficiency of the evidence to support a verdict may not be granted "unless the court is satisfied that, considering all credible evidence and reasonable inferences therefrom in the light most favorable to the party against whom the motion is made, there is no credible evidence to sustain a finding in favor of such party." Section 805.14(1), STATS. That standard applies to both the trial court and this court on appeal. *Weiss v. United Fire and Casualty Co.,* 197 Wis. 2d 365, 388, 541 N.W.2d 753, 761 (1995). It applies to any motion challenging the sufficiency of the evidence.

---

[2] The applicable sections of § 805.14(5), STATS., addressing Mendivil's motions after verdict provide:

(c) *Motion to change answer.* Any party may move the court to change an answer in the verdict on the ground of insufficiency of the evidence to sustain the answer.

(d) *Motion for directed verdict.* A party who has made a motion for directed verdict or dismissal on which the court has not ruled pending return of the verdict may renew the motion after verdict. In the event the motion is granted, the court may enter judgment in accordance with the motion.

While the trial court granted both of Mendivil's alternative motions, we choose to review the order changing the "Yes" answers to the negligence and cause questions to "No." *See Mills v. Regent Ins. Co.,* 152 Wis. 2d 566, 570-71, 449 N.W.2d 294, 296 (Ct. App. 1989). Mendivil's motion challenged the sufficiency of the evidence to support the "Yes" answers; therefore, we review the evidence produced by both Richards and Mendivil to determine whether credible evidence exists which supports a verdict in Richards's favor.

In considering a motion to change the jury's answers to the questions on the verdict, a trial court must view the evidence in the light most favorable to the verdict and affirm the verdict if it is supported by any credible evidence. *Nelson v. Travelers Ins. Co.,* 80 Wis. 2d 272, 282-83, 259 N.W.2d 48, 52-53 (1977). The trial court is not justified in changing the jury's answers if there is any credible evidence to support the jury's findings. *See Bennett v. Larsen Co.,* 118 Wis. 2d 681, 705-06, 348 N.W.2d 540, 554 (1984). In reviewing the evidence, the trial court is guided by the proposition that "[t]he credibility of witnesses and the weight given to their testimony are matters left to the jury's judgment, and where more than one inference can be drawn from the evidence," the trial court must accept the inference drawn by the jury. *Id.* at 706, 348 N.W.2d at 554 (quoted source omitted). On appeal this court is guided by these same rules. *See Nelson,* 80 Wis. 2d at 282, 259 N.W.2d at 52.

When we review an order changing the jury's answers, we begin with considerable respect for the trial court's better ability to assess the evidence. *See Weiss,* 197 Wis. 2d at 388-89, 541 N.W.2d at 761. How-

671

ever, an appellate court may overturn the trial court's decision to change the jury's answers if the record reveals that the trial court was "clearly wrong." *See id.* at 389, 541 N.W.2d at 761.

> When a circuit court overturns a verdict supported by "any credible evidence," then the circuit court is "clearly wrong" in doing so. When there is *any* credible evidence to support a jury's verdict, "even though it be contradicted and the contradictory evidence be stronger and more convincing, nevertheless the verdict . . . must stand."

*Id.* at 389-90, 541 N.W.2d at 761-62 (emphasis in original) (quoted source and footnote omitted).

The trial court changed the jury's answers on the verdict after concluding that the jury failed to follow the res ipsa loquitur instruction that was given.[3] The court reasoned that "the event did not occur through any failure of Dr. Mendivil's part to exercise due care and skill. It happened because the wire either broke or was transected . . .." The trial court concluded that "this is not a res ipsa loquitur case" because there was no evidence to show when or how the wire was broken or transected; the event occurred despite the exercise of

---

[3] The trial court gave a modified version of the res ipsa loquitur instruction, WIS J I—CIVIL 1024:

If you find that the breast of Terry Richards was injured as a result of the operation performed by Dr. Mendivil and if you further find the injury to the breast of Terry Richards is a kind that does not ordinarily occur if a surgeon exercises proper care and skill, then you may infer, from the fact of surgery to the breast of Terry Richards, that Dr. Mendivil failed to exercise that degree of care and skill which surgeons usually exercise. This rule will not apply if Dr. Mendivil has offered an explanation for the injury to the breast of Terry Richards which satisfies you that the incident to Terry Richards did not occur through any failure on Dr. Mendivil's part to exercise due care and skill.

due care and skill; and, the procedure used was not without problems.

Conscious of our duty to give deference to the trial court's superior advantage for judging the evidence, we nevertheless differ with the trial court's evaluation of the evidence presented by Richards and Mendivil.

We start our discussion with a brief review of the res ipsa loquitur doctrine.[4] Res ipsa loquitur was first applied to medical malpractice actions in 1963. *Fehrman v. Smirl,* 20 Wis. 2d 1, 21-22, 121 N.W.2d 255, 266 (1963). In *Fehrman,* the supreme court loosened the rule that a physician's negligence could only be proven by expert testimony in situations where the errors were of such a nature that a layperson could conclude from common experience that such mistakes do not happen if the physician had exercised proper skill and care. *McManus v. Donlin,* 23 Wis. 2d 289, 297, 127 N.W.2d 22, 26 (1964).

■

The doctrine is not a rule of pleading. Res ipsa loquitur is a rule of evidence that permits the jury to draw a permissible inference of the physician's negligence without any direct or expert testimony as to the physician's conduct at the time the negligence

---

[4] We explained the origins of the phrase in *Lecander v. Billmeyer,* 171 Wis. 2d 593, 598 n.2, 492 N.W.2d 167, 169 (Ct. App. 1992):

> "Res ipsa loquitur" is a latin phrase which means, "the thing speaks for itself." It is the offspring of a casual word of Baron Pollock . . . in an 1863 English case, . . . in which a barrel of flour rolled out of a warehouse window and fell upon a passing pedestrian. In its inception the principle was nothing more than a reasonable conclusion, from the circumstances of an unusual accident, that it was probably the defendant's fault. [Citation and quoted source omitted.]

occurred.[5] *See Hoven v. Kelble,* 79 Wis. 2d 444, 449, 256 N.W.2d 379, 381 (1977). The doctrine can be invoked in a medical malpractice action when: (1) there is evidence that the event in question would not ordinarily occur unless there was negligence; (2) the agent or instrumentality that caused the harm was within the defendant's exclusive control; and (3) the evidence allows more than speculation but does not fully explain the event. *See Fiumefreddo v. McLean,* 174 Wis. 2d 10, 17, 496 N.W.2d 226, 228 (Ct. App. 1993).

Mendivil successfully argued in the trial court that neither of the first two elements were present. The trial court concluded that there was no evidence to show when or how the wire was broken or transected. We disagree with this conclusion because it disregards Richards's complaint that the only negligence at issue was the failure of Mendivil to remove all of the localization wire from her breast. Whether the wire was broken or transected during the procedure was not relevant to whether Mendivil used the requisite degree of care and skill to insure that all of the wire was removed from Richards at the conclusion of the procedure.

---

[5] Wisconsin is among the minority of those jurisdictions that permit a jury to draw the permissible inference from either its common knowledge or the testimony of expert witnesses. *Fehrman v. Smirl,* 20 Wis. 2d 1, 25, 121 N.W.2d 255, 268 (1963). There is a danger that when a plaintiff relies upon expert testimony that the evidence of negligence will be so substantial that a full and complete explanation of causation is provided and res ipsa loquitur would not be applicable. *See Utica Mut. Ins. Co. v. Ripon Co-op,* 50 Wis. 2d 431, 439, 184 N.W.2d 65, 69 (1971). That problem is not present in this case because Richards relied upon the common knowledge and experience of the jury rather than present any expert testimony.

"Courts have generally recognized that the leaving of a foreign object in the patient's body is sufficient in itself . . . to give rise to the application of res ipsa loquitur. The general theory is that such an omission, within the common knowledge of laymen, could not occur without negligence." *Froh v. Milwaukee Medical Clinic, S.C.*, 85 Wis. 2d 308, 314, 270 N.W.2d 83, 85 (Ct. App. 1978). The trial court's attempt to distinguish the application of res ipsa loquitur in the cases involving foreign objects left in a patient's body from leaving a localization hook wire in Richards's body because there was no evidence on how the wire was broken or transected fails. In making the distinction, the trial court ignored testimony from Mendivil that, as the surgeon, it was his job and his goal to remove the wire from Richards's breast. Mendivil testified that it was expected medical practice for surgeons to assure themselves that there are no foreign objects left in a patient when they are done with surgery. The trial court also overlooked the testimony of the attending radiologist that the idea of the surgery was to remove the wire and the tissue sample. The trial court was clearly wrong in ignoring the credible medical evidence that supported the first element: That there is evidence that the event in question would not ordinarily occur unless there was negligence.[6]

---

[6] Mendivil fashions other attempts to distinguish this case from those where foreign objects were left in a patient's body and res ipsa loquitur was applied. He argues that the propensities of the localization wire are beyond the common experience of the jury; he argues that the biopsy procedure is beyond the common knowledge of the jury; and, he argues that in this procedure the surgeon is operating in a blind surgical field and the difficulties this presents for a surgeon are beyond the common experience of the jury. All of these attempts to distinguish ·

Although the trial court did not find it necessary to consider the second element, Mendivil asserts that he and the radiologist shared control and, therefore, the requirement that he have exclusive control was not present. Mendivil's argument is based on a literal interpretation of the requirement for exclusive control. Wisconsin has rejected such an application of the requirement of exclusive control, "the courts do not give this requirement a strict literal interpretation, and the phrase 'exclusive control' is not in all cases an accurate statement of the principle sought to be expressed." *Hoven,* 79 Wis. 2d at 452, 256 N.W.2d at 383. All that is required to meet the criteria of this element is that the plaintiff present sufficient evidence that eliminates other responsible causes. *Id.* Here, there is credible evidence that there had not been any other intervening acts on the part of others that could have caused the localization wire to remain in Richards's breast. Mendivil was the only surgeon performing the biopsy and he testified that not only was it his job, but it was expected medical practice for the surgeon to remove all foreign objects from the patient's body.

■

The trial court was clearly wrong in overturning the verdict because it substituted its judgment of the credibility of the witnesses and the weight of the evidence for the jury's judgment. The jury sifted through the evidence presented by Richards and the explanation provided by Mendivil and drew the permissible inference that the only explanation for the injuries suf-

this case fail because the act of negligence Richards complains about is Mendivil's failure to remove the entire localization wire after dissecting the suspected tissue and before closing the incision.

676

fered by Richards was the negligence of Mendivil in leaving the wire in her breast. The trial court erred in rejecting the inference drawn by the jury, *Bennett,* 118 Wis. 2d at 706, 348 N.W.2d at 554, even if it believed there was strong contradictory evidence. *Weiss,* 197 Wis. 2d at 389-90, 541 N.W.2d at 761-62.

*By the Court.*—Judgment reversed and cause remanded.