COURT OF APPEALS
DECISION
DATED AND FILED

December 29, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.      **2021AP1123**

Cir. Ct. No.  **2019TP7**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

IN RE THE TERMINATION OF PARENTAL RIGHTS TO A. C.,
A PERSON UNDER THE AGE OF 18:

DOUGLAS COUNTY DEPARTMENT OF HEALTH & HUMAN SERVICES,

PETITIONER-RESPONDENT,

V.

J. S.,

RESPONDENT,

J. M.,

RESPONDENT-APPELLANT.

APPEAL from orders of the circuit court for Douglas County: GEORGE L. GLONEK, Judge. *Affirmed.*

¶1      HRUZ, J.[1]  Jessica[2] appeals from an order terminating her parental rights (TPR) to her daughter, and an order denying her motion for postdispositional relief.[3]  Jessica contends that the Douglas County Department of Health & Human Services (the County) presented insufficient evidence for the jury to find that she was an unfit parent.

¶2      Specifically, Jessica argues that the County failed to make a reasonable effort to provide the court-ordered services that were necessary for her to meet the requirements of the dispositional order finding her daughter a child in need of protection or services (CHIPS).  Jessica further argues that the County failed to abide by either Wisconsin or federal guidelines establishing best practices for creating a family interaction plan in CHIPS cases, thereby preventing the County from making a reasonable effort to provide Jessica with the services ordered by the court, as required in WIS. STAT. § 48.415(2)(a)2.b.  On these bases, Jessica argues that she should be granted a new trial, or that her CHIPS case should be reopened for the County to provide her these court-ordered services.

¶3      We conclude that the County presented sufficient evidence at trial on the many ways in which it made a reasonable effort to provide Jessica with

---

[1]  This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2019-20).  All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[2]  For ease of reading and to protect confidentiality, we refer to the appellant in this confidential matter using a pseudonym, rather than her initials or name.

[3]  Cases appealed under WIS. STAT. RULE 809.107 "shall be given preference and shall be taken in an order that ensures that a decision is issued within 30 days after the filing of the appellant's reply …."  See RULE 809.107(6)(e).  Conflicts in this court's calendar have resulted in a delay.  It is therefore necessary for this court to sua sponte extend the deadline for a decision in this case.  See WIS. STAT. RULE 809.82(2)(a); *Rhonda R.D. v. Franklin R.D.*, 191 Wis. 2d 680, 694, 530 N.W.2d 34 (Ct. App. 1995).  Accordingly, we extend our deadline to the date this decision is issued.

2

court-ordered services, and the jury's verdict was therefore supported by credible evidence. Additionally, the Wisconsin and federal standards that Jessica identifies do not control the jury's analysis of whether the County has made a reasonable effort to provide Jessica with the services ordered by the court. We reject the remainder of Jessica's claims because they are premised on her failed evidentiary challenge. These claims include that her attorney was ineffective for not challenging the sufficiency of the evidence at trial, and that a new trial should be granted in the interest of justice because the jury was not presented with all of the relevant evidence. Accordingly, we affirm the TPR order, as well as the order denying Jessica's motion for postdispositional relief.

## BACKGROUND

¶4      Jessica's daughter was born in 2015. In early 2017, a temporary physical custody order for Jessica's daughter was entered, and after a subsequent CHIPS adjudication, she was placed outside of Jessica's home. Among the conditions for the return of her daughter, Jessica was required to maintain safe and adequate housing, complete recommendations from her mental health assessment, demonstrate an ability to meet her daughter's basic needs, complete a parenting skills course, and undergo an Alcohol or Drug Abuse (AODA) assessment.

¶5      On June 11, 2019, the County filed a TPR petition. The petition alleged two grounds for termination of Jessica's rights: (1) continuing CHIPS under WIS. STAT. § 48.415(2)(a); and (2) failure to assume parental responsibility under § 48.415(6)(a).[4]    Jessica contested the petition, and a jury trial on the

---

[4] The County also petitioned to terminate the parental rights of the child's father. His rights are not at issue in this appeal.

3

grounds phase occurred on December 17, 2020. The County presented evidence at trial on both grounds for termination alleged in the petition.

¶6      The jury entered a verdict in favor of the County on both grounds for termination, finding Jessica to be unfit as a parent. On the continuing CHIPS ground under WIS. STAT. § 48.415(2)(a), the jury answered "yes" to three questions presented on the verdict form: (1) whether Jessica's daughter had been adjudicated CHIPS and had been placed outside of her home for a cumulative total period of six months or more; (2) whether the County made a reasonable effort to provide the services ordered by the circuit court; and (3) whether Jessica had failed to meet the conditions established for the safe return of her daughter to her home.[5]  A dispositional hearing was held on January 29, 2021, and the court subsequently terminated Jessica's parental rights to her daughter.

¶7      Jessica filed a motion for postdispositional relief on July 29, 2021, challenging the sufficiency of the evidence presented at trial, and her trial counsel's effectiveness. After holding an evidentiary hearing, the circuit court ultimately concluded that Jessica's arguments had no merit, and it denied her motion and her request for a new trial. Jessica now appeals from the TPR order and the order denying her motion for postdispositional relief.

## DISCUSSION

¶8      Jessica argues that she should be granted a new trial because insufficient evidence was presented at trial to support the jury's verdict. In

---

[5] The sole question on the verdict form pertaining to the failure to assume parental responsibility ground was "has [Jessica] failed to assume parental responsibility for [her daughter]?

particular, she claims the County failed to satisfy its burden of proving that it made a reasonable effort to provide the services ordered by the circuit court, and that Jessica was not provided the reasonable effort mandated by statute.[6]

¶9      On appeal, this court will not upset a verdict if any credible evidence supports it. *See **Richards v. Mendivil***, 200 Wis. 2d 665, 671, 548 N.W.2d 85 (Ct. App. 1996). The credibility of the witnesses and the weight afforded to their testimony are left to the jury. *See **id.*** If more than one reasonable inference may be drawn from the evidence, this court must accept the jury's choice, and we consider the evidence in the light most favorable to the jury's verdict. *See **State v. Poellinger***, 153 Wis. 2d 493, 501, 506-07, 451 N.W.2d 752 (1990). We search the record for credible evidence to sustain the verdict, not for evidence to sustain a verdict the jury did not reach. *See **Richards***, 200 Wis. 2d at 671.

¶10     To establish at trial that the continuing CHIPS ground for an involuntary TPR exists, the County has the burden to prove that several conditions are met. *See* WIS. STAT. § 48.415(2). The only condition Jessica challenges on appeal is whether the County made a reasonable effort to provide the services that

---

[6] In her brief-in-chief, Jessica states that the County's burden of proof at trial was to show that it had made a "reasonable effort[] to reunite [Jessica] and her child." As Jessica correctly identifies elsewhere in her briefs, however, making a "reasonable effort" as defined in WIS. STAT. § 48.415(2)(a)2. only requires that the County make good faith efforts to provide "the services ordered by the court." The relevant statutes do not impose a requirement upon the County to make a reasonable effort specifically to reunite Jessica and her daughter, and the County did not need to prove at trial that it had done so. *See* § 48.415(2). Accordingly, we properly limit our analysis to only the question of whether a reasonable effort was made to provide Jessica with the court-ordered services of which she was obligated to take advantage of in order to have her daughter returned to her care.

the circuit court ordered her to use as a condition for the return of her daughter to her home.[7]  *See* § 48.415(2)(a)2.b.  A "reasonable effort" is defined as

> an earnest and conscientious effort to take good faith steps to provide the services ordered by the court which takes into consideration the characteristics of the parent or child or of the expectant mother or child, the level of cooperation of the parent or expectant mother and other relevant circumstances of the case.

Sec. 48.415(2)(a)2.a.  The jury was provided this definition at trial and was asked to determine whether the question of if a reasonable effort to provide court ordered services under the continuing CHIPS ground had been proven by evidence that was clear, satisfactory and convincing, to a reasonable certainty.  *See* WIS JI—CHILDREN 324.

¶11     Jessica argues that the County failed to make a reasonable effort to provide her with court-ordered services because it failed to follow The Child

---

[7]  As the County points out, Jessica devotes only one line in her brief-in-chief to the other ground for termination that the County brought at trial, stating: "The [County] effectively prevented [Jessica] from assuming parental responsibility through the rules it placed on her." Jessica did not raise substantive arguments specifically related to the failure to assume parental responsibility ground in her postdispositional motion, and she does not develop her argument in her brief-in-chief beyond this plain statement.  Her argument is undeveloped, and we could decline to address it.  *See* ***State v. Pettit***, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992).

In her reply brief, Jessica argues that "she was actively prevented from assuming any sort of parental responsibility because she was not provided [with a] reasonable effort[]," effectively contending that her arguments apply equally to the failure to assume parental responsibility ground.  Whatever the potential merit of this contention, because we ultimately conclude that there was sufficient evidence supporting the jury's verdict regarding whether the County made a reasonable effort to provide Jessica with court-ordered services, Jessica's argument that the County's failure to do so prevented her from assuming parental responsibility likewise has no merit.

Welfare Ongoing Services Standards ("the Wisconsin Standards"), a document from the Wisconsin Department of Children and Families that Jessica describes as providing social workers with the framework to meet the reasonable effort requirement under WIS. STAT. § 48.415(2)(a)2. *See* WIS. DEP'T OF CHILDREN AND FAMILIES, DIV. OF SAFETY AND PERMANENCE, Ongoing Services Standards (June 2017), [https://web.archive.org/web/20170801010524/https://dcf.wisconsin.gov/files/cwportal/policy/pdf/ongoing-services-standards.pdf]. Jessica summarizes a number of listed requirements from the Wisconsin Standards for creating and implementing a Family Interaction Plan, and she then contends that "if the [County] does not follow the above requirements, it cannot prove that it has put forth [a] 'reasonable effort[]' to provide the parent with the services ordered by the court."

¶12 In support of this proposition, Jessica cites only generally to the definition of "reasonable effort" from WIS. STAT. § 48.415(2)(a)2.a. Yet, neither that definition nor any subsection of § 48.415—the statute governing grounds for involuntary TPR—nor WIS. STAT. §§ 48.345 or 48.355—the statutes governing the dispositional order in this case—make reference to the Wisconsin Standards. Although this set of standards might be used to establish expectations or general requirements for social workers managing a case, Jessica provides no authority for her assertion that it is a benchmark by which the jury was required to judge whether the County made a reasonable effort to provide court-ordered services to Jessica, or that its verdict was unsupported because it did not do so. In fact, in her reply brief, Jessica admits that she understands "there is not direct case law that states the County is to be following the Wisconsin Division of Children and Families standards."

¶13    We further note that the jury was given an opportunity to consider the Wisconsin Standards and how the County's behavior in relation to those standards might have affected its ability to make a reasonable effort to provide Jessica with court-ordered services.  Jessica's counsel elicited testimony on the number of weekly visits that the County allowed, and then contrasted that number to the recommended number from the Wisconsin Standards.  The circuit court permitted questioning about the Wisconsin Standards and how those guidelines compared to the County's actions.  More specific requirements tying these standards to the proof required that the County made a reasonable effort to provide court-ordered services—i.e., Jessica's suggestion that the County cannot prove it made a reasonable effort if it did not adhere to the Wisconsin Standards—would need to be established by statute.  This recourse is within the role of the legislature, however, and it is not our place to read requirements into a statute where they do not exist.

¶14    Similarly, Jessica argues that the County failed to follow the best practices listed in a set of federal standards published by the Administration for Children and Families—a division of the United States Department of Health and Human Services—when managing her case and regulating her contact with her daughter.  We have already concluded that complying with the Wisconsin Standards is not a necessary element of the analysis as to whether the County provided a reasonable effort, and that same conclusion applies—with equal, if not greater force—to these federal standards.  Furthermore, Jessica provides no citation to legal authority explaining why federal best practices—which she reveals as being from an informational memorandum provided to Jessica's social worker—would have any bearing on, or authority over, the County's actions or the

analysis as to whether the County provided a reasonable effort in this Wisconsin case.

¶15    We further conclude that the County presented sufficient evidence at trial to establish that it made a reasonable effort to provide court-ordered services to Jessica. The court had ordered Jessica to participate in an AODA assessment, a mental health assessment, and parenting skills education, as well as to maintain appropriate housing, among other listed conditions. The County presented evidence that it arranged for an AODA assessment for Jessica, and that one of Jessica's social workers, Araceli Whitwam-Sell, followed up regularly to inquire about Jessica's progress regarding her AODA assessment and other court-ordered services. Whitwam-Sell also confirmed that she worked with another of Jessica's case managers at Positive Alternatives—where Jessica stayed and participated in programming until she turned eighteen—to address the court-ordered required services and provide "anything that we could put together for [Jessica] that we felt would benefit her in obtaining a holistic approach to—as we would refer to it, being as strong as she could be and as ready as she could be to be able to be that mom to her child."

¶16    Whitwam-Sell further testified that Jessica was given assistance in moving to a smaller school—when she was found to have been struggling with her current one—and that, cooperatively, the County tried several hybrid and other options to help Jessica complete her education. Whitwam-Sell confirmed that she had worked on setting up housing for Jessica with the YWCA, which also provided assistance with job-seeking and parenting skills. Whitwam-Sell testified that Jessica was eventually asked to leave the YWCA after failing to participate in the services there—including by not meeting with the case manager at the facility. After leaving the YWCA, Whitwam-Sell stated it was "difficult to make contact

with [Jessica]," especially as she was no longer under the County's placement. Whitwam-Sell also testified that after she recommended mental health assessment locations, Jessica eventually completed a mental health assessment, but she only did so five months after the TPR petition was filed. Whitman-Sell confirmed that Jessica never completed an AODA assessment despite the County's attempts to refer her to an organization that could conduct one, and Whitman-Sell's personal attempts to follow up with Jessica on a regular basis.

¶17 Additional evidence was presented that the County attempted to assist Jessica with scheduling parental-skills education, and it followed up regularly with her progress toward obtaining that education. Evidence was also presented that the County regularly provided and fulfilled a variety of other case management duties. These efforts included ensuring that Jessica was able to have weekly scheduled visits with her daughter, transporting her daughter to scheduled visits, and supervising those visits.

¶18 Jessica raises several arguments surrounding whether the County made a reasonable effort to provide her with court-ordered services, including that: (1) she was limited to one visit with her daughter per week; (2) her supervised visitation agreement included several restrictive rules, including: "You must keep your emotions under control. Do not cry during the visit"; and (3) she was generally limited in creating a strong relationship with her daughter as a result of the County's requirements and limitations. Many of these arguments, however, were raised by Jessica's attorney during the trial, and the jury was allowed to consider them in weighing whether the County made a reasonable effort to provide Jessica with the relevant court-ordered services. In addition, the County elicited testimony at trial that it was "not uncommon for [Jessica] to miss three or four visits in a row," and that she had missed approximately twenty-six weekly visits—

all of which permitted the jury to conclude that allowing more weekly visits would not have led to a greater connection between Jessica and her daughter. Ultimately, we conclude there was more than sufficient credible evidence to support the jury's verdict that the County made a reasonable effort to provide Jessica with the necessary services, particularly as we are required to construe the testimony and evidence in the light most favorable to the jury's verdict.

¶19     Jessica further claims that her trial counsel was ineffective for failing to object to the lack of evidence presented at trial, or to move for a directed verdict at the conclusion of the County's case. A parent in a TPR action has the right to the effective assistance of counsel. *Oneida Cnty. Dep't of Soc. Servs. v. Nicole W.*, 2007 WI 30, ¶33, 299 Wis. 2d 637, 728 N.W.2d 652. To determine whether a parent received ineffective assistance, we apply the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Nicole W.*, 299 Wis. 2d 637, ¶33. To establish ineffective assistance under the *Strickland* test, a parent must demonstrate both that his or her attorney performed deficiently and that the deficient performance prejudiced the parent's defense. *See Nicole W.*, 299 Wis. 2d 637, ¶33.

¶20     To establish deficient performance, the parent must show that counsel's performance fell below an objective standard of reasonableness. *See Strickland*, 466 U.S. at 687-88. Whether an attorney rendered ineffective assistance is a mixed question of fact and law. *State v. Nielsen*, 2001 WI App 192, ¶14, 247 Wis. 2d 466, 634 N.W.2d 325. We will uphold the circuit court's findings of fact unless they are clearly erroneous. *Id.* However, whether the facts are sufficient to establish ineffective assistance is a question of law that we review independently. *Id.*

¶21 We have already determined that Jessica incorrectly asserts that whether the County made a reasonable effort to provide court-ordered services must be evaluated in light of the Wisconsin Standards and the referenced federal standards. We have also concluded that there was sufficient evidence presented at trial to support the jury's verdict. Accordingly, Jessica's trial counsel did not fall below an objective standard of reasonableness such that counsel's representation of her was deficient for electing not to challenge the evidence supporting the jury's verdict, or to move for a directed verdict on those grounds. In evaluating counsel's performance, this court is highly deferential to counsel's strategic decisions. *State v. Dalton*, 2018 WI 85, ¶35, 383 Wis. 2d 147, 914 N.W.2d 120. Given the ample evidence presented at trial, as discussed above, Jessica's counsel could reasonably have concluded that the jury's verdict was sufficiently supported by credible evidence, and that a challenge to the sufficiency of the evidence would therefore have been meritless.

¶22 In addition, during a postdisposition motion hearing, the circuit court addressed Jessica's argument that her trial counsel should have moved for a directed verdict or to challenge the sufficiency of the evidence. The court expressly concluded that "[i]f she had made those motions, those motions would have been denied, because there certainly was sufficient evidence in the record, both at the end of the [County's] case and at the conclusion of the trial, for the jury to make those findings, which they did." The record supports the court's determination in this regard, and Jessica's trial counsel cannot be deemed to be ineffective for failing to make a motion that would have been denied. *See State v. Berggren*, 2009 WI App 82, ¶21, 320 Wis. 2d 209, 769 N.W.2d 110. Because we conclude Jessica's trial counsel did not perform deficiently, we need not address

the prejudice portion of the ineffective assistance analysis. *See Strickland*, 466 U.S. at 697.

¶23 Finally, Jessica argues that she should be granted a new trial in the interest of justice because the circuit court erred by not allowing Whitwam-Sell to testify regarding her knowledge of the federal best practice standards discussed above. Jessica argues that because the jury was not presented with this relevant evidence, her case was not fairly determined and the real controversy was never tried.

¶24 The power to grant a new trial in the interest of justice is to be exercised "infrequently and judiciously." *State v. Avery*, 2013 WI 13, ¶38, 345 Wis. 2d 407, 826 N.W.2d 60 (citation omitted). We have already established that Jessica's arguments regarding the evidence presented at trial have no merit. The jury not hearing testimony on the issue of a social worker's knowledge of *informational* federal best practices—from standards that are not a part of the analysis under Wisconsin's statutory requirement that the County make a reasonable effort to provide court-ordered services, much less tied to Wisconsin specifically—did not result in the real controversy in this case going untried. Nor is there any indication that justice miscarried at any point in the trial or the proceedings afterward. Accordingly, this is not the rare case where a new trial might be warranted.[8] We therefore affirm the TPR order and the order denying Jessica's motion for postdispositional relief.

---

[8] In the alternative, Jessica requests that her CHIPS case be reopened and that the County make an ongoing reasonable effort to provide her with court-ordered services. Jessica provides no case law supporting her position, or an explanation of the authority by which this court could reopen her CHIPS case, as opposed to simply remanding this appeal for a new trial. Her argument is undeveloped, and we decline to address it. *See Pettit*, 171 Wis. 2d at 646-47.

*By the Court.*—Orders affirmed

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4