COURT OF APPEALS
DECISION
DATED AND FILED

July 19, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2021AP1986**

**STATE OF WISCONSIN**

Cir. Ct. No.  2020TP50

**IN COURT OF APPEALS
DISTRICT III**

IN RE THE TERMINATION OF PARENTAL RIGHTS TO G. Q. W.,
A PERSON UNDER THE AGE OF 18:

CHIPPEWA COUNTY DEPARTMENT OF HUMAN SERVICES,

   PETITIONER-RESPONDENT,

 V.

J. W.,

   RESPONDENT-APPELLANT.

APPEAL from orders of the circuit court for Chippewa County: BENJAMIN J. LANE, Judge. *Affirmed.*

¶1 HRUZ, J.[1] Janine[2] appeals from an order terminating her parental rights to her child, and from an order denying her motion for postdisposition relief.[3] She argues there was insufficient evidence to support the jury's verdict that the Chippewa County Department of Human Services ("the County") made the required reasonable effort to provide the services ordered by the circuit court in its dispositional order designating her son, George, as a child in need of protection or services ("CHIPS"). Additionally, Janine argues that her trial counsel was ineffective by failing to object at a number of key points during her grounds-phase trial. Ultimately, we conclude that there was sufficient evidence to support the jury's verdict and that Janine's counsel was not constitutionally ineffective. Accordingly, we affirm the orders.

## BACKGROUND

¶2 Janine's then-fourteen-month-old son, George, was taken into foster care by the County on June 18, 2019, after Janine was arrested for violating conditions of her probation. During the course of her arrest, Janine admitted to smoking methamphetamine and possessing drug paraphernalia. George was removed from Janine's home based on the safety concerns resulting from Janine's

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[2] For ease of reading and to protect confidentiality, we refer to the appellant and her son in this confidential matter using pseudonyms, rather than their initials or names.

[3] Cases appealed under WIS. STAT. RULE 809.107 "shall be given preference and shall be taken in an order that ensures that a decision is issued within 30 days after the filing of the appellant's reply." *See* RULE 809.107(6)(e). Conflicts in this court's calendar have resulted in a delay. It is therefore necessary for this court to sua sponte extend the deadline for a decision in this case. *See* WIS. STAT. RULE 809.82(2)(a); ***Rhonda R.D. v. Franklin R.D.***, 191 Wis. 2d 680, 694, 530 N.W.2d 34 (Ct. App. 1995). Accordingly, we extend our deadline to the date this decision is issued.

use of methamphetamine in the home, in addition to Janine's inability to care for George due to her incarceration.

¶3      After a dispositional hearing held on August 5, 2019, George was designated as a child in need of protection or services and was placed with a foster family. As a part of the CHIPS dispositional order, Janine was required to meet a number of court-ordered conditions in order for George to be returned to her. During the hearing, Janine was informed orally of the potential grounds for the termination of her parental rights to George, and she also signed a written form including the same information.

¶4      On December 23, 2020, the County filed a petition to terminate Janine's parental rights to George, alleging that grounds for termination existed under WIS. STAT. § 48.415(2)(a)—continuing CHIPS. Janine contested the County's petition, and a one-day jury trial on the grounds for termination took place on May 27, 2021. As relevant to the issues on appeal, opening and closing statements were made by both parties and by George's guardian ad litem ("GAL"). A number of witnesses testified regarding the court-ordered conditions Janine was required to meet for George to be returned to her custody. Only portions of the lengthy trial testimony are relevant to the scope of this appeal, and they are detailed throughout the remainder of this opinion.

¶5      The conditions imposed on Janine required that she: (1) cooperate with the County and attend all scheduled meetings while following any recommendations made therein; (2) notify her social worker within twenty-four hours of any police contacts and changes to her residence, telephone number, or employment; (3) cooperate with announced and unannounced County visits; (4) provide her social worker with documentation of her completed conditions;

(5) not provide primary care for any child under the age of eighteen; (6) participate in individual counseling as deemed appropriate and follow through with any recommendations; (7) not associate or live with anyone involved in using illegal drugs or any dangerous activity that could affect George's safety; (8) adhere to any treatment recommendations made as a result of George's developmental and psychological assessments; (9) have regular and successful visits and contact with George pursuant to the County's visitation plan; (10) engage with any assessments or recommended treatments as deemed appropriate by her social worker; (11) provide George with a safe, suitable and stable home in order to meet his physical, emotional, medical and environmental needs on a daily basis; (12) not use or possess any drugs or chemical substances, and submit to random drug screenings; and (13) sign consents for treatment and any necessary release-of-information forms to allow the County to obtain and share information with providers for case management purposes.

¶6      Abigail Smasal, Janine's case manager, testified regarding the efforts that she and the County made regarding each of Janine's court-ordered conditions, in addition to Janine's level of compliance with those conditions. Janine was offered weekly visits with George until March 2020, but she missed a significant number of these visits. Subsequently, the COVID-19 pandemic necessitated the transition of these visits to a virtual format, at which time the County and George's foster parents increased Janine's visits to two per week.

¶7      George's foster father testified that Janine attended forty-seven out of ninety-four of her scheduled virtual visits. When Janine missed a virtual visit, she would sometimes email afterward to explain that her absence was due to technical problems or a lack of cellular connection, but she did not always do so. In addition, George's foster father testified that despite his wife creating a Google

4

phone number that was available for Janine to call if she was having issues with a virtual visit, and asking her to reach out if she had issues, Janine did not do so.

¶8      Smasal testified that although Janine attended the majority of their required monthly meetings, she did miss a few meetings.  In addition, Janine "frequently" did not notify Smasal of her address changes or of her contacts with police.  Smasal explained that despite consistent referrals and follow-ups, Janine did not complete her required counseling and failed to complete assessment programs the County deemed appropriate.  Smasal also testified that throughout the majority of the period she was working with Janine, including when Janine was participating in rehabilitation services, Janine continued to test positive for methamphetamine.

¶9      Additionally, Smasal stated that she believed Janine failed to comply with two other conditions—namely, by associating with others involved with illegal drugs and by failing to obtain stable housing—the latter of which was also testified to by other witnesses.  Smasal also testified to her efforts in helping Janine meet her various conditions, including, among other things, driving to Janine's home to conduct drug tests personally; referring Janine to counseling and treatment programs; providing her with a gas card; and pointing her to medical transport options to help with transportation.

¶10      Janine testified at trial regarding her continued drug use and her inability to meet many of her court-ordered conditions, including those pertaining to housing, treatment, drug use, and visitation.  However, Janine testified that many of these failings were due to a lack of effort on the County's part, a lack of internet access to facilitate her virtual visits with George, and a lack of available transportation to allow her to get to her required services.

¶11     The jury ultimately entered a verdict in favor of the County, finding that the County made a reasonable effort to provide the services ordered by the circuit court and that Janine had failed to meet the conditions established for George's safe return.   After a dispositional hearing, the court ordered the termination of Janine's parental rights to George on June 17, 2021.

¶12     Janine filed a motion for postdisposition relief, arguing that her attorney was ineffective for failing to object at key points during the grounds trial. On February 16, 2022, after holding a *Machner*[4] hearing, the circuit court denied Janine's motion.   Janine now appeals from the order terminating her parental rights to George and from the order denying her motion for postdisposition relief. We include additional facts in the discussion section where relevant.

## DISCUSSION

### 1.  Sufficiency of the evidence

¶13     Janine first argues that the County presented insufficient evidence at trial to support the jury's verdict.   Specifically, she argues the County did not satisfy its burden of proving that George continued to be a child in need of protection or services because the County failed to show that it made a reasonable effort to provide court-ordered services to her.   We disagree.

¶14     On appeal, this court will not upset a verdict if any credible evidence supports it.   *See Richards v. Mendivil*, 200 Wis. 2d 665, 671, 548 N.W.2d 85 (Ct. App. 1996).   The credibility of the witnesses and the weight afforded to their

---

[4] *State v. Machner*, 92 Wis. 2d 797, 804, 285 N.W.2d 905 (Ct. App. 1979).

testimony are left to the jury. *See id.* If more than one reasonable inference may be drawn from the evidence, this court must accept the jury's choice, and we consider the evidence in the light most favorable to the jury's verdict. *See State v. Poellinger*, 153 Wis. 2d 493, 501, 506-07, 451 N.W.2d 752 (1990). As such, we search the record for credible evidence to sustain the verdict, not for evidence to sustain a verdict the jury did not reach. *See Richards*, 200 Wis. 2d at 671.

¶15 To establish that the continuing CHIPS ground for an involuntary termination of parental rights (TPR) exists, the County has the burden to prove that several elements are met. *See* WIS. STAT. § 48.415(2). The only element Janine challenges on appeal is whether the County made a reasonable effort to provide the services ordered by the circuit court, so that Janine could meet the conditions for George to be returned to her home. *See* § 48.415(2)(a)2.b. The court instructed the jury that a "reasonable effort" is defined as

> an earnest and conscientious effort to take good faith steps to provide the services ordered by the court which takes into consideration the characteristics of the parent or child or of the expectant mother or child, the level of cooperation of the parent or expectant mother and other relevant circumstances of the case.

Sec. 48.415(2)(a)2.a. The jury was then asked to determine whether the County had proven, by evidence that was clear, satisfactory and convincing, to a reasonable certainty, that it made a reasonable effort to provide court-ordered services under the continuing CHIPS ground. *See* WIS JI—CHILDREN 324.

¶16 Janine explains that although she initially had in-person visits with George, as a result of the COVID-19 pandemic, those visits were ultimately converted to video calls. Janine argues that although she had informed the County that she did not have a reliable phone or internet connection, it failed to aid her in

obtaining a phone, a computer, a reliable cellular connection, or a Wi-Fi connection to facilitate her video visits with George. Janine takes issue with Smasal's testimony at trial that those items "would be something that we'd have to provide every client just to make things fair, and we couldn't sustain that financially," and Janine argues that such services should be tailored to individual parents' needs.

¶17 We conclude that credible evidence presented at trial supports the jury's conclusion that the County made a reasonable effort to facilitate Janine's visits. As the County points out, Janine attended less than half of her scheduled in-person visits prior to the COVID-19 pandemic, and the County doubled the number of visits to twice a week after the visits transitioned to a virtual format. In addition, despite her claims, the evidence is clear that Janine was not wholly unable to access these virtual visits. Janine had a working phone, in addition to the ability to borrow one from her roommate if hers was not working. Furthermore, Janine testified that because she had bad reception where she lived, she sometimes needed to go down the street to "get the extra Wi-Fi." Although potentially inconvenient, this fact further shows that Janine had the capacity to attend most of her scheduled video calls with George.

¶18 We note that the County and George's foster parents made these visits easier by scheduling them at the same time every week and by making them accessible by the same Zoom link each time. In addition, while working closely with Smasal, George's foster father offered to accommodate Janine if she had any issues with the virtual visits. George's foster parents even provided Janine with a unique phone number to call to get in touch with them. The foster father also testified, however, that Janine never notified him or his wife via this designated number that she was experiencing any issues. George's foster father also noted

that sometimes Janine would notify him after the fact that she had missed the call due to data or other issues, but she often would not provide any notice regarding her failure to connect. His visit log also shows that many visits were missed for unexplained reasons. Ultimately, Janine attended forty-seven out of ninety-four of the scheduled virtual visits. This fact shows that Janine had the ability to attend many of the virtual visits, even if she ultimately failed to do so on numerous occasions.

¶19    Although it might have been easier for Janine if the County had provided her with equipment or internet service to facilitate her attendance at the virtual visits, the County was not obligated to do so in order to make "an earnest and conscientious effort to take good faith steps to provide the services ordered." *See* WIS. STAT. § 48.415(2)(a)2.a. While Janine points to school districts and other State organizations that she claims were able to provide equipment for virtual calls during the pandemic, what is at issue here is the reasonableness of the County's effort as defined under § 48.415(2)(a)2.a., given its capabilities under the circumstances. *See* § 48.415(2)(a)2.a. (defining "reasonable effort" as an earnest and conscientious effort that takes into consideration, among other things, "other relevant circumstances of the case").

¶20    In particular, Smasal directly testified that the County could not afford to provide cell phones, computers, or internet service to all of its clients. In addition, to cooperate in remedying these issues, Janine could have asked George's foster parents for assistance, been consistent in following up about call-in issues, or timely alerted Smasal and the County to her inability to make particular calls, if she was truly unable to do so at a given time. The record demonstrates that there were a number of ways that Janine could have ensured that she attended most of her video calls, or that she at least consistently notified

George's foster parents and the County of the issues she was having. We therefore conclude that the evidence presented at trial supports the jury's conclusion that the County's failure to provide Janine with special equipment for virtual calls did not, under the totality of the circumstances, constitute a failure by the County to make a reasonable effort to provide her with court-ordered services.

¶21 Next, Janine argues that the County failed to provide her with assistance in finding housing. She asserts that despite the requirement that she find safe housing for George, the only actions taken by the County were to ensure that she had received a voucher for housing. In addition, Janine contends Smasal's testimony that Janine only failed to meet this condition because "[Smasal] believe[d] she didn't put forth the effort" was controverted by the housing coordinator's testimony. We disagree that the evidence was insufficient for the jury to conclude that the County made a reasonable effort to assist Janine in finding adequate housing.

¶22 Smasal testified that Janine had received a housing voucher through the Chippewa County Housing Authority (CCHA).[5] Smasal said she had contacted Janine's housing authority worker at the CCHA to ensure that Janine's housing voucher was still valid. In addition, Janine's probation agent testified that in July 2019, Janine had been offered a place to live at the Hope House, a facility associated with Chippewa County's recovery court. The agent explained that

---

[5] Successful applicants to a CCHA housing program receive a "voucher" for housing. A housing voucher can be redeemed by a program participant to have the program pay a portion of rental costs. The housing voucher is valid for sixty days, unless an extension is requested and approved. By ensuring that Janine's housing voucher was still valid, Smasal effectively ensured that Janine was still an eligible participant in the housing program and able to obtain housing through the program to which Smasal had referred her.

recovery court is a program associated with the court system that helps individuals with addiction issues. The agent further explained that the Hope House was a "stable place to … maintain sobriety," but that Janine had turned down the offer to stay there. The agent testified that this refusal was likely because George could not have stayed with Janine at the Hope House if she had regained custody of him.[6] However, the agent also testified that the facility was "transitional" and that individuals generally only stayed there during recovery before transitioning to permanent housing.

¶23     A housing specialist with the CCHA, Kelly Begley, also testified regarding the process of obtaining housing through that program. She explained that people apply to the CCHA program, are placed on a waiting list, and when they are approved, they receive a voucher from the program that is good for sixty days. Then, it is the program participant's responsibility to find housing, after which the program assists them in making payments. Begley testified that Janine successfully obtained housing using a voucher in May 2019. Begley testified, however, that Janine was evicted in June 2019 for engaging in criminal activity. Janine reapplied to the program in December 2019, and she received another voucher in November 2020 but was again unable to find suitable housing. Begley testified that Janine requested extensions to the eligibility period for her housing voucher when necessary, and she had been looking for housing while her voucher was eligible. Begley further testified that Janine also applied for Section 8

---

[6] Janine later testified at trial that she turned down the offer to stay at the Hope House because she "was not a resident of Chippewa County" and therefore "was not eligible" to stay there. She provided this same justification for not participating in recovery court. To the extent Janine means to raise this argument again on appeal, the jury was entitled to find the probation agent's description of Janine's eligibility for housing programs more credible than Janine's claims.

11

housing, the second of Chippewa County's two housing programs. On her first application in March 2020, Janine failed to provide required documentation and was thus not approved. On her second application in August 2020, Janine was successfully placed on the waiting list. No further facts were elicited regarding Section 8 housing at trial.

¶24 In addition, and notably, Janine does not suggest anything that the County could have done differently in assisting her in finding housing, nor does she assert that she asked for more assistance and did not receive it. Furthermore, the trial testimony also suggests that Janine was evicted from housing she had obtained due to her engaging in criminal activity, and that part of Janine's problem establishing stable housing may have been that eviction, among other factors. This contextualizes the County's ability to assist Janine in finding appropriate housing.

¶25 Based on the testimony at trial, we determine that credible evidence supported the jury's conclusion that the County made a reasonable effort to help Janine find housing. In particular, Smasal ensured that Janine had an active voucher to help pay for any housing that she found. Based on the testimony, it is evident that the main problem was not with the CCHA's program failing to offer to pay for Janine's housing, but with Janine finding suitable housing with which to use a voucher. While we acknowledge that Janine made efforts to apply to the housing program and for extensions of her eligibility, the County also made a reasonable effort to assist her.

¶26 Janine next argues that the County failed to assist her in arranging transportation to visits, treatment services, and drug screenings. She claims Smasal's testimony that the County did not provide her with transportation

because she could get a ride from a friend has no basis, and she points to several recent TPR cases where parents were provided with transportation—asserting that the County should have done the same here.

¶27 Janine misstates the trial record. Smasal did not testify that she declined to arrange transportation for Janine simply because she thought that Janine could get a ride from her friend; instead, she highlighted several ways in which she helped facilitate Janine's transportation. Smasal testified that Janine had access to a medical transport service provided by the State, which required Janine to call twenty-four hours in advance to receive transportation. Although this solution would not work for Janine's periodic random drug screenings (as they occurred with less than twenty-four hours' notice), it was available for the remainder of her scheduled appointments.

¶28 Similarly, Janine's psychotherapist at the Transitions psychiatric care program, Victoria Zwiefelhofer, testified that while Janine had attendance problems, medical transportation services were available to Janine. Janine testified at trial that although she attempted to use this service, "[m]ost of the time they didn't show up. That's why I didn't make … so many days." Although the jury was ultimately entitled to determine whether this excuse was credible, even if it were true, Smasal provided several more examples of accommodations that the County made to assist Janine with her transportation to services.

¶29 In particular, Smasal testified that she provided Janine with a gas card on one occasion after Janine drove a car to their visit. On another occasion, Smasal performed a drug test based on Janine's hair sample instead of another form of testing, so that Smasal could conduct one test for the previous three-month period, instead of needing to arrange tests requiring Janine to travel every two

weeks. In addition, Smasal testified that George was actually moved to a different foster family in November 2019, in part so that he would live closer to where Janine resided. Furthermore, Smasal testified that she drove to visit Janine *herself* to conduct drug tests on nine or ten occasions because she knew that Janine sometimes had transportation difficulties.

¶30 Given these various attempts by the County to facilitate Janine's travel, we conclude there was credible evidence presented at trial supporting the jury's conclusion that the County made a reasonable effort to assist Janine with transportation in order to allow her to attend services and visits, so as to comply with her court-ordered conditions.

¶31 Finally, we note that for all of Janine's arguments regarding the sufficiency of the evidence, the jury was presented with the relevant facts, and it was given the opportunity to assess whether the County's efforts to provide services were sufficient under the circumstances. The jury had the opportunity to hear Janine's explanations at trial, assess her credibility, and then determine whether the County's efforts met the statutory standard. In addition, the evidence at trial showed that Janine was provided various assistance relating to other court-ordered conditions about which she does not specifically raise an argument on appeal, including referrals and follow-ups for group counseling, intensive outpatient treatment, and recovery court for drug and alcohol dependency.

¶32 Even if the jury thought that the County could have done more regarding certain aspects of Janine's court-ordered conditions, it was entitled to assess the conditions and testimony as a whole to conclude that, ultimately, the County made a reasonable effort to assist Janine in meeting those conditions pursuant to WIS. STAT. § 48.415(2)(a)2.a.-b. For the reasons discussed above, and

having reviewed the entire trial transcript, we conclude that, taken in the light most favorable to the jury's verdict, credible evidence supported the jury's determination that the County made a reasonable effort to provide the services ordered by the circuit court.

## 2. Ineffective Assistance

¶33　Janine next argues that her trial counsel was constitutionally ineffective for failing to object at several key points during her trial. A TPR respondent has the right to effective assistance of counsel, as that right is outlined in *Strickland v. Washington*, 466 U.S. 668 (1984). *See A.S. v. State*, 168 Wis. 2d 995, 1004-05, 485 N.W.2d 52 (1992). On appeal, we uphold the circuit court's factual findings as to counsel's conduct unless those findings are clearly erroneous, but we decide de novo whether that conduct constitutes ineffective assistance. *Rhonda R.D. v. Franklin R.D.*, 191 Wis. 2d 680, 710-11, 530 N.W.2d 34 (Ct. App. 1995).

¶34　To establish ineffective assistance of counsel warranting reversal of a TPR order, the respondent parent must show that counsel's performance was deficient and that the deficient performance was prejudicial. *A.S.*, 168 Wis. 2d at 1005. To establish deficient performance, a parent must show that trial counsel's performance fell below an objective standard of reasonableness. *State v. Breitzman*, 2017 WI 100, ¶38, 378 Wis. 2d 431, 904 N.W.2d 93. There is a strong presumption that trial counsel's conduct "falls within the wide range of reasonable professional assistance." *Id.* (citation omitted). In addition, "[c]ounsel's decisions in choosing a trial strategy are to be given great deference." *Id.* (alteration in original) (citation omitted). In fact, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually

15

unchallengeable" on appeal. ***Strickland***, 466 U.S. at 690. Deficient performance is prejudicial where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." ***Id.*** at 694.

## I. GAL's Opening Statement

¶35 First, Janine argues that her attorney was ineffective for failing to object to the GAL's opening statement, claiming it improperly focused on the case being a first step toward giving George "permanence." Janine correctly notes that this consideration is only proper for the disposition phase of a TPR proceeding, not the grounds phase. *See* WIS. STAT. § 48.426(3)(f) (Among the circuit court's considerations at the disposition phase is "[w]hether the child will be able to enter into a more stable and permanent family relationship as a result of the termination."). In particular, Janine asserts that the GAL's statement created an unreasonable risk that the jury would improperly consider George's best interests during the grounds phase instead of focusing on Janine's parental rights. We disagree that the GAL's statement created such a risk.

¶36 As noted, Janine is correct that George's best interests are not at issue at the grounds phase of a TPR proceeding. *See* ***Steven V. v. Kelley H.***, 2004 WI 47, ¶26, 271 Wis. 2d 1, 678 N.W.2d 856 ("The best interests of the child do not 'prevail' until the parent has been declared unfit after fact-finding by the court or jury at the grounds phase of the TPR proceeding." (citation omitted)). However, in the context of the entirety of the GAL's opening statement, it is evident that the GAL's reference to "permanence" did not direct the jury to consider George's best interests instead of focusing on Janine's parental rights. In full, the GAL's opening statement reads:

> [I will k]eep this brief. So I wanted to just reiterate that [George is] three years old. He's been out of home for two years. This has been an ongoing case that's been happening with a small child not being able to have an interaction properly with his mother for the majority of his life.
>
> This case comes down to having a first step to bringing him into a place where he can have some permanence and have—know where he belongs. So what we're looking to do today is to have you look and see if there was actually an effort made to give him that permanence from his mom; that she should—she be looked at as not having the ability to complete those requirements that she had, or do you think that she should have been able to make those requirements by now, and is it fair to [George] that that hasn't been done in two-thirds of his life, and should we be setting something in—at a point right now where we're able to move forward and give him that permanence that he needs. Thank you.

¶37    Considering the GAL's statement about "permanence" in context, it is evident the comments—a few of which were perhaps imprudent—were framed within the consideration of whether Janine had made an effort to meet court-ordered conditions so that George could be returned to her home. The GAL's comments were not improper simply because they described George's out-of-home placement or general lack of permanence in his life to that point, and the GAL's mentioning of George in some capacity is to be expected due to his role as George's advocate.

¶38    Importantly, the GAL neither directed the jury to consider George's best interests nor introduced language confusing the legal standards that the jury would ultimately need to evaluate. Instead, the GAL explicitly and properly directed the jury by explaining that "what we're looking to do today" is to see if Janine made an effort to give George permanence and whether she "should have been able to make those requirements by now." In this context, the focus of the

permanence issue was whether Janine had attempted to meet the court-ordered conditions necessary to have George returned to her—not an abstract focus on George's best interests.

¶39     In sum, despite the GAL alerting the jury to George's general need for permanence, this focus was within the framework of highlighting the importance of the jury's assessment of whether Janine had made an effort to cooperate and meet the court-ordered conditions.  The GAL's short opening statement—one of three opening statements—did not create an unreasonable risk that the jury would improperly consider George's best interests at this phase of the TPR proceedings.  Accordingly, Janine's attorney was not ineffective for failing to object to the GAL's characterizations.

¶40     Although Janine points out that the County stipulated to the fact that there was "no strategic reason" for Janine's attorney not to object to the GAL's opening statement, the County specifically qualified that it is "not saying that he performed deficiently."  Because we ultimately conclude that the GAL's opening statement was not improper, whether Janine's attorney had a strategic reason for not objecting to it does not alter our conclusion that his decision not to object was not an instance of deficient performance.  And given that counsel's performance relating to the GAL's opening statement was not deficient, we need not address any of Janine's arguments related to prejudice.  *See **Strickland***, 466 U.S. at 687.

## II. *Smasal's Testimony*

¶41     Janine also argues that her trial attorney was ineffective for failing to object to portions of Smasal's testimony.  Janine claims that Smasal "usurped" the role of the jury in answering questions the jury was supposed to decide.  Specifically, Janine takes issue with Smasal's testimony that she had made a

reasonable effort to provide Janine with services, that Janine had not met the conditions for return, and that George was a child in continuing need of protection or services. Janine claims that these points of testimony were not rationally based on Smasal's own perceptions and they were not helpful to the jury's understanding of witness testimony or the facts at issue. Accordingly, Janine claims that Smasal's testimony was not within the permissible scope of a nonexpert opinion, as required by WIS. STAT. § 907.01. We again reject Janine's arguments.[7]

¶42 WISCONSIN STAT. § 907.01 permits opinion testimony by lay witnesses as long as it is: (1) rationally based on the perception of the witness; (2) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue; and (3) not based on scientific, technical, or other specialized knowledge within the scope of a witness under WIS. STAT. § 907.02(1). Sec. 907.01. Janine first argues that "Smasal's perceptions at trial were shown to have been inaccurate," pointing to Smasal's defensive tone and arguing that Smasal's testimony about Janine's efforts in obtaining housing was contradicted by another witness's testimony. However, simply presenting testimony that conflicts with that of another witness or speaking in a defensive tone does not amount to Smasal's testimony not being rationally based on her own perceptions. Whatever the ultimate merit of Smasal's perceptions, as long as her testimony was rationally based upon them, it would be acceptable as evidence. Janine points to no

---

[7] Janine further argues that Smasal's testimony was cumulative, risked confusing the jury, and was prejudicial under WIS. STAT. § 904.03. However, Janine fails to develop this additional, single-sentence argument, and we therefore decline to address it. *See State v. Pettit,* 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) ("We may decline to review issues inadequately briefed.").

additional evidence supporting her contention that Smasal testified as to matters beyond her personal knowledge, and we reject her argument.

¶43     Next, Janine claims that Smasal's testimony was not helpful to the jury's understanding of the facts at issue.  Janine argues that Smasal's opinion of her own work was "not necessary" to clarify any issues and that testifying to whether she had made a reasonable effort to provide Janine with services was a legal conclusion that should have been left to the jury.  To the contrary, no witness testimony could have been more helpful to the jury's understanding of the facts in this case on the reasonable efforts issue than testimony from the County employee generally responsible for Janine's case and for making a reasonable effort to assist her in meeting her court-ordered conditions.  We agree with the circuit court's reasoning at the postdisposition hearing that "Smasal was the best person to testify regarding her opinions on how the services were rendered and how [Janine] responded to those services."

¶44     Regarding Janine's claim that Smasal made improper legal conclusions in her testimony, counsel for the County asked Smasal a single time whether she—not the County—had made "reasonable efforts" to help Janine achieve the court-ordered conditions, and whether she thought she could have done anything more.  Smasal's response to these questions was not testimony to an ultimate legal conclusion but, rather, was a social worker's opinion of her own success in providing efforts to ensure that Janine met the relevant conditions.  It was appropriate evidence for the jury to consider when reaching its overall conclusion as to whether the County, as a whole, made a reasonable effort to provide Janine with assistance.

¶45    For all of the above reasons, we reject Janine's arguments that Smasal's testimony was improper. Her attorney was thus not deficient in failing to object to the challenged testimony.[8]

*III. GAL's Closing Statement*

¶46    Janine next argues that her attorney was ineffective for failing to object to the GAL's closing statement, alleging that portions of that argument were improper because they introduced new information to the jury not taken from the evidence presented at trial. Specifically, Janine argues the GAL informed the jury that Janine could have told the CHIPS court if she felt that certain conditions for return were impossible, and she was therefore responsible for any difficulties she had in meeting them. Janine further criticizes the GAL for telling the jury that Janine had informed the judge presiding over the CHIPS proceedings that she was eager to meet those conditions, and that she stated, "[L]et's go and we can do it"—a statement to which neither she nor any other witness testified at the TPR grounds-phase trial.

¶47    The GAL, in his closing statement, generally discussed Janine's drug use, her level of compliance with court-ordered conditions, and his position that the County made a reasonable effort to provide court-ordered services to Janine. In the introductory portion of the GAL's closing statement—the portion with which Janine takes issue—the GAL stated:

---

[8] Janine again points to the County's stipulation at the postdisposition hearing that counsel had "no strategic reason" not to object to Smasal's testimony (but declining to stipulate to deficient performance). Because we conclude that Smasal's testimony was not improper, that stipulation has no bearing on our conclusion that Janine's counsel was not deficient here.

> So there was a CHIPS hearing way back in August of 2019, and [Janine] had the list of conditions that she had to complete.
>
> Basically the judge goes over that with her and asks her if she's able to complete those conditions, and she gives feedback, and if she says no, I can't, then the judge talks with her and figures out if there's some way they can adjust those conditions that can meet her needs, but she didn't raise concerns at that time that she couldn't meet the conditions. She pled to the CHIPS and said, you know, let's go and we can do it.

In this appeal, the GAL asserts that these statements were not improper, arguing that after our supreme court's holding in *Kenosha County DHS v. Jodie W.*, 2006 WI 93, 293 Wis. 2d 530, 716 N.W.2d 845, circuit courts routinely conduct colloquies in CHIPS proceedings and ask parents questions to determine whether any conditions for return are impossible to meet.

¶48 We disagree with the GAL's contention that simply because colloquies about the possibility of meeting conditions are commonly made, we can assume that such a colloquy was provided in the CHIPS proceedings at issue here, or that Janine indicated to the CHIPS court that she had no problems in meeting the conditions for return. In looking to Janine's testimony at trial, however, we can determine that a few key events occurred in the CHIPS proceedings. First, although Janine seemed unsure which hearings she had attended, she confirmed that she did attend a CHIPS hearing. She further confirmed that she thought the court ordered her to comply with conditions "at every hearing," and that there were reviews to determine what progress had been made on her conditions and to see what help she needed, although Janine claimed that "nobody was offering me help."

¶49 When Janine was asked at the TPR trial, "[w]hen the court ordered those conditions for you to follow, did you feel any of those conditions were unreasonable or was an unrealistic expectation of you to meet those conditions," she responded:

> I guess during COVID, yes, because I had been signed up for them in December of 2019, and then further down the road, it was like February-ish, April-ish, and they said they called me back, and like the parenting one, the TREM group one, and the intensive IOP said that at this time it'd just be further on down the road till they figured out what they were going to do.
>
> But there wasn't going to be face-to-face meetings at that time, and they had—it'd just be like, they would contact me at a later date when they started them, and then that was Zoom, and that was a couple months later—well, more like five months later that I finally got in.

¶50 At no point in Janine's testimony did she confirm that she had been asked by the CHIPS court if she felt able to complete her conditions or that she told the court "let's go and we can do it," or even something equivalent.[9] We can only determine that Janine attended a CHIPS hearing, that she had been advised of the conditions required for the return of her child and the possible consequences if she did not, and that she had signed the notice form concerning the grounds for her TPR. We recognize that the GAL might have been explaining the general process involved in a CHIPS hearing, and by stating Janine "pled to the CHIPS and said, you know, let's go and we can do it," he may have been referring to what Janine's

_____

[9] Although Janine's statement that she encountered problems with the court-ordered conditions during the COVID-19 pandemic suggests that she did *not* have problems with the feasibility of the conditions at the original CHIPS dispositional hearing in 2019, a transcript of that hearing is not in the record. Accordingly, we cannot conclude as such.

23

actions in pleading to CHIPS suggested or inferred, instead of a direct quote that she made.

¶51     Still, we conclude that the GAL's short characterization suggests the existence of a specific statement by Janine that is not supported by any evidence at the trial in this TPR proceeding. Such an argument was improper at closing, either because it incorrectly stated the facts testified to at trial, or because it introduced new evidence in the GAL's closing statement that had not been introduced during trial.

¶52     Although there may be strategic reasons not to object during closing argument, here the County directly stipulated that Janine's attorney had "no strategic reason why he didn't object." We therefore conclude that Janine's attorney was deficient for failing to object to the GAL's statement. We also conclude, however, that this deficiency did not result in prejudice to Janine, and Janine's attorney was therefore not constitutionally ineffective. *See **Strickland***, 466 U.S. at 692. Ultimately, the GAL's closing statement, one of several given at trial, discussed the evidence at issue very briefly, and no exceptional emphasis was placed on the newly introduced evidence. Instead, the majority of the GAL's closing statement focused on Janine's drug use and the efforts she made in meeting the court-ordered conditions. The brief nature of the improper comment in relation to the overall trial—at which significant evidence was presented supporting the County's position—renders it improbable that the improper comment prejudiced Janine.

¶53     In addition, the circuit court instructed the jury at the outset of trial that "[r]emarks of attorneys are not evidence. If any remarks suggest certain facts not in evidence, disregard the suggestion." We presume that jurors follow the

24

instructions given by the court. *State v. Dorsey*, 2018 WI 10, ¶55, 379 Wis. 2d 386, 906 N.W.2d 158. This instruction reduces the chances that Janine's counsel's failure to object to the GAL's statement was prejudicial. Ultimately, given the minimal impact that this brief characterization had on the entire trial, and given the court's proper jury instruction, we conclude that counsel's failure to object to the GAL's statement did not prejudice Janine.

*By the Court.*—Orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.